IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00002-MEH

VERONICA GOMEZ,

    Plaintiff,

v.

CHILDREN'S HOSPITAL COLORADO,

    Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Defendant Children's Hospital Colorado ("CHCO") seeks to dismiss five of Plaintiff Veronica Gomez' ten causes of action, which arise from Ms. Gomez' employment with CHCO. I hold the FLSA preempts Ms. Gomez' breach of contract and promissory estoppel claims arising out of CHCO's failure to pay overtime. Additionally, Ms. Gomez fails to allege a violation of the Colorado Wage Claim Act ("CWCA") based on CHCO's refusal to pay out her accrued sick leave at the time of her resignation. However, Ms. Gomez sufficiently alleges breach of contract and promissory estoppel claims for failure to pay straight time while on call. Accordingly, I grant in part and deny in part CHCO's Partial Motion to Dismiss.

## BACKGROUND

### I. Facts

    The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Ms. Gomez in her Amended Complaint,

which I take as true for my analysis under Fed. R. Civ. P. 12(b)(6).[1]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ms. Gomez began working for CHCO as a medical assistant in November 2007.  Am. Compl. ¶ 14, ECF No. 21.  On August 30, 2015, Ms. Gomez transferred to CHCO's risk management department as a non-supervisor risk management analyst.  *Id.* ¶ 17.  This position, which is salaried, required Ms. Gomez to occasionally work overtime and on-call shifts.  *See id.* ¶¶ 35, 47, 58, 88.  CHCO classified Ms. Gomez as exempt pursuant to the FLSA and its On-Call/Callback Pay Policy ("on-call policy").  *Id.* ¶¶ 17, 136, 149.  The on-call policy used essentially identical standards as the Fair Labor Standards Act ("FLSA") to determine whether an employee is exempt.  *Id.* ¶ 137.

Ms. Gomez alleges the on-call policy required that CHCO pay exempt employees $4.00 per hour for time spent on call.  *Id.* ¶ 138.  Non-exempt employees received $4.00 per hour in addition to straight time or overtime pay, if applicable.  *Id.* ¶ 181.  CHCO did not pay Ms. Gomez $4.00 per hour, and it did not provide straight time or overtime pay for her time spent on call.  *Id.* ¶ 182.

In April 2016, Ms. Gomez discussed with a co-worker the possibility of switching to an hourly position, because Lisa Shannon (Ms. Gomez' supervisor) told her that she was required to stay at work until 5:00 p.m.  *Id.* ¶¶ 46–47.  Although Ms. Shannon initially informed Ms. Gomez that she could transfer to an hourly position, she told Ms. Gomez four days later that she must remain a salaried employee.  *Id.* ¶¶ 58, 64.

In early May 2016, Ms. Gomez contacted Ms. Shannon about her belief that CHCO must pay

---

[1] Ms. Gomez makes numerous allegations regarding her discriminatory treatment while working for CHCO.  Because CHCO does not seek dismissal of her Title VII claim, I do not detail these allegations.

2

her for on-call time. *Id.* ¶ 62. When Ms. Gomez and Ms. Shannon met on May 27, 2016, Ms. Shannon informed Ms. Gomez that salaried employees do not receive on-call pay. *Id.* ¶ 65. In a July 13, 2016 meeting with BJ Thompson in Human Resources ("HR"), Ms. Gomez asked for clarification regarding the on-call policy. *Id.* ¶¶ 105, 121. Mr. Thompson informed Ms. Gomez that the policy is outdated and not all exempt employees receive on-call pay. *Id.* ¶ 122.

After Ms. Gomez and Ms. Shannon had numerous disagreements regarding Ms. Gomez' work performance and Ms. Shannon's differential treatment of her, Ms. Gomez told Ms. Shannon that her last day would be September 21, 2016. *Id.* ¶¶ 66–75, 131. However, Ms. Shannon informed Ms. Gomez that she could finish working on September 16 but remain on payroll until September 21. *Id.* ¶ 132.

Ms. Gomez had 396.46 unused hours of sick leave when she resigned. *Id.* ¶ 206. Although Ms. Gomez provided a written demand requesting that CHCO compensate her for this time, CHCO failed to do so. *Id.* ¶¶ 207–08.

## II. Procedural History

Based on the preceding allegations, Ms. Gomez initiated this case in Colorado state court on November 28, 2017. Compl., ECF No. 6. In an Amended Complaint filed on February 13, 2018, Ms. Gomez asserts ten causes of action: (1) breach of contract for refusal to pay on-call wages; (2) promissory estoppel based on failure to pay wages for time spent on-call; (3) denial of overtime pay in violation of the FLSA; (4) denial of overtime pay in violation of the CWCA; (5) breach of contract for failure to pay overtime and straight time while on call; (6) promissory estoppel based on refusal to pay overtime and straight time for on-call hours; (7) breach of implied contract for failure to pay overtime; (8) promissory estoppel based on a denial of overtime pay; (9) refusal to pay

3

accrued illness hours in violation of the CWCA; and (10) sex discrimination in violation of Title VII. Am. Compl. ¶¶ 134–228, ECF No. 21. At first glance, the first and fifth claims appear to be duplicative; however, a review of Ms. Gomez' allegations reveals she pleads these claims in the alternative. The first claim alleges CHCO failed to pay her wages as an exempt employee pursuant to the on-call policy. *Id.* ¶¶ 138–39. Ms. Gomez' fifth claim asserts CHCO improperly classified her as exempt and failed to pay her straight time and overtime wages required by the on-call policy for non-exempt employees. *Id.* ¶¶ 181–82.

On February 13, 2018, CHCO responded to the Amended Complaint by filing the present Partial Motion to Dismiss, ECF No. 25. CHCO seeks dismissal of Ms. Gomez' fifth, sixth, seventh, eighth, and ninth causes of action. *Id.* According to CHCO, the FLSA preempts the fifth through eighth claims to the extent they seek overtime. *Id.* at 5–7. Additionally, CHCO contends the fifth and sixth claims fail to allege Ms. Gomez was entitled to straight time for her on-call hours. *Id.* at 7–9. Lastly, CHCO asserts its internal policies and the CWCA do not require that it pay Ms. Gomez her accrued sick leave at resignation. *Id.* at 9–12.

Ms. Gomez responded to CHCO's motion on March 6, 2018. Resp. to Partial Mot. to Dismiss, ECF No. 32. Ms. Gomez first asserts she may recover her accrued sick leave under the CWCA, because this benefit is earned, vested, and determinable. *Id.* at 3–6. Ms. Gomez then argues the FLSA does not preempt her breach of contract and promissory estoppel claims, because CHCO denies that its procedures for determining whether employees are exempt are different from those in the FLSA. *Id.* at 7–8. Lastly, Ms. Gomez contends she states breach of contract and promissory estoppel claims for straight time, because she alleges CHCO improperly classified her as exempt under its on-call policy. *Id.* at 8–9. CHCO subsequently filed a reply brief. Reply in Supp. of

4

Partial Mot. to Dismiss, ECF No. 33.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

**I.     Ms. Gomez' Fifth, Sixth, Seventh, and Eighth Claims: Breach of Contract and Promissory Estoppel**

Ms. Gomez' fifth through eighth claims assert CHCO breached a contract and is liable for promissory estoppel, because it failed to pay overtime wages. Am. Compl. ¶¶ 179–203, ECF No. 21. I find that the FLSA preempts these claims. Ms. Gomez' fifth and sixth claims also allege CHCO failed to pay her straight time. *Id.* ¶¶ 181, 188. The FLSA does not preempt these causes of action, and Ms. Gomez includes sufficient allegations to state claims for breach of contract and promissory estoppel.

   A.     Failure to Pay Overtime (Fifth Through Eighth Claims)

The FLSA preempts state-law contract claims that "essentially require the same proof as claims asserted under the FLSA itself." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007); *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-MJW, 2017 WL 3866769, at *9 (D. Colo. Sept. 5, 2017) ("Plaintiffs' contract/quasi contract claims are preempted to the extent they are for unpaid overtime wages or are simply a restatement of their FLSA claim."). Claims require the same proof when the facts alleged in support of the FLSA claim "merely echo[]" those supporting the state law claims. *Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, No. 14-cv-02820-LTB, 2015 WL 4245822, at *5 (D. Colo. July 14, 2015). Thus, if Ms. Gomez alleges essentially identical facts in support of her state law and FLSA claims, I must dismiss the state law claims. *See Chytka v. Wright Tree Serv., Inc.*, 925 F. Supp.2d 1147, 1173 (D. Colo. 2013) (dismissing the plaintiff's unjust enrichment claim for overtime pay, because it was preempted by the FLSA).

I find that Ms. Gomez' fifth, sixth, seventh, and eighth causes of action for overtime are duplicative of her FLSA claim. Ms. Gomez' FLSA claim alleges she "does not qualify as an exempt

6

employee and thus CHCO wrongfully denied payment of overtime for hours worked while on-call." Am. Compl. ¶ 165. Ms. Gomez' fifth cause of action contends CHCO breached its on-call policy by improperly classifying her as exempt, and thus, "not provid[ing] remuneration [for] . . . overtime pay, when appropriate, for time Gomez spent working while on call." *Id.* ¶¶ 180–82. Similarly, her seventh claim alleges she "and CHCO entered into an implied contractual agreement under which CHCO agreed to pay overtime under the terms of CHCO's Overtime Guidelines for hours worked beyond the standard forty (40) hours per week." *Id.* ¶ 192. Ms. Gomez makes essentially identical allegations in support of her promissory estoppel claims, except she asserts CHCO failed to fulfill its promise to pay her overtime. *Id.* ¶¶ 185, 198. Thus, Ms. Gomez' FLSA and common law claims all allege that CHCO mis-classified her as exempt and failed to pay her at the overtime rate for hours worked beyond forty. As such, the claims are duplicative.

The Honorable Lewis T. Babcock's decision in *Barnett* supports my holding. 2015 WL 4245822, at *5. In that case, the plaintiffs' "sole allegation [was] that [the] [d]efendants agreed to pay [the] [p]laintiffs their full hourly wages for all hours they worked as law enforcement officers and then breached their contract with [the] [p]laintiffs when they failed to pay [the] [p]laintiffs their full wages for all service the [p]laintiffs performed." *Id.* The court found that the FLSA preempted the plaintiffs' breach of contract claim. *Id.* Similarly, Ms. Gomez alleges that CHCO agreed to pay her at the overtime rate for all hours worked over forty and breached a contract between the parties by failing to do so.

Ms. Gomez attempts to differentiate her FLSA and state law claims by arguing that CHCO used a different standard than that in the FLSA for determining exempt status. Resp. to Partial Mot. to Dismiss 7–8, ECF No. 32. However, Ms. Gomez alleges precisely the opposite. Am. Compl. ¶

137 ("CHCO utilized standards which are functionally identical to those expressed in the FLSA for determination of employee exemptions."). To overcome this problem, Ms. Gomez asserts that CHCO denied this allegation in its Answer. Resp. to Partial Mot. to Dismiss 7. This argument is unpersuasive for two reasons. First, Ms. Gomez does not cite any authority supporting the notion that courts should accept the assertions in a partial answer over those in the complaint when ruling on a partial motion to dismiss. Such a proposition would contradict the well-established principle that courts are to accept as true the allegations in the complaint. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, CHCO does not explicitly deny Ms. Gomez' allegations. Instead, it states it is unable to respond, because Ms. Gomez does not identify the internal standards to which she is referring. Answer ¶ 137, ECF No. 24. CHCO denies the allegation only to the extent an admission or denial is necessary. *Id.* Therefore, Ms. Gomez' Amended Complaint (and CHCO's Answer) do not plausibly suggest that CHCO uses a different standard than the FLSA for determining exempt status.

Similarly, Ms. Gomez' Amended Complaint does not allege that CHCO's overtime guidelines contractually obligated it to pay a greater overtime rate than the FLSA requires. If Ms. Gomez had so alleged, her state law claims would be distinct. *See Bowe v. SMC Elec. Prods., Inc.*, 916 F. Supp. 1066, 1072 (D. Colo. 1996) ("An employer can contract to provide more protection against uncompensated overtime than FLSA requires."); *Albee v. Vill. of Bartlett III.*, 861 F. Supp. 680, 691 n. 23 (N.D. Ill. 1994) ("[A]s a matter of logic, that greater protection can just as well take the form of a promise to pay for a longer time period . . . as, for example, the form of a promise to pay double time rather than time-and-a-half for overtime."). Without an allegation that CHCO agreed to pay Ms. Gomez more than the FLSA requires, I cannot find her claims distinct.

In sum, to the extent Ms. Gomez' fifth, sixth, seventh, and eighth claims allege CHCO failed to pay her overtime, I find them identical to her FLSA claim. As such, the FLSA preempts Ms. Gomez' these claims.

B.   Failure to Pay Straight Time (Fifth and Sixth Claims)

Ms. Gomez' fifth and sixth claims also allege that CHCO breached a contract and failed to fulfill its promise by not paying her straight time for hours she worked on call. Am. Compl. ¶¶180–82, 185–88, ECF No. 21. I find that Ms. Gomez' fifth and sixth claims state a cause of action for failure to pay wages at straight time.

Unlike Ms. Gomez' overtime causes of action, the FLSA does not preempt her claims for straight time in excess of the minimum wage. *See Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-MJW, 2017 WL 3866769, at *9 (D. Colo. Sept. 5, 2017) ("But, as [the] [p]laintiffs argue, their claim alleges something more, *i.e.*, the failure to pay straight time, which the Court finds is not a matter within the scope of the FLSA."); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 530 (E.D.N.Y. 2011) ("[T]he common law claims that are based upon the alleged failure to properly compensate plaintiffs for 'straight time' wages are not duplicative of the FLSA cause of action, and therefore are not preempted."). Indeed, CHCO agrees that these claims are not preempted. Partial Mot. to Dismiss 7–9, ECF No. 25. Thus, I must analyze only whether Ms. Gomez includes sufficient facts to state claims for breach of contract and promissory estoppel.

With regard to her breach of contract claim, Ms. Gomez alleges CHCO's on-call policy constitutes a contract to pay non-exempt employees $4.00 per hour in addition to standard pay for time spent on call. Am. Compl. ¶¶ 180–81. According to Ms. Gomez, CHCO breached this contract and caused her damages by classifying her as exempt and failing to pay her the required amounts.

9

*Id.* ¶ 182. This is sufficient to state a breach of contract claim. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (listing the elements of a breach of contract claim as "(1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff" (internal citations omitted)).

Similarly, Ms. Gomez alleges CHCO promised through its on-call policy to pay her $4.00 per hour and her normal straight time rate for all time spent on call. Am. Compl. ¶ 185. Ms. Gomez relied on this promise by performing on-call work for CHCO, and CHCO did not honor its promise. *Id.* ¶¶ 187–88. Thus, Ms. Gomez sufficiently alleges her promissory estoppel claim. *Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. App. 2003) (listing the elements of a promissory estoppel claim as, "(1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice").

CHCO contends Ms Gomez fails to state a claim, because she does not allege that it actually classified her as non-exempt under the on-call policy. Partial Mot. to Dismiss 8. Thus, according to CHCO, the on-call policy did not require it to pay Ms. Gomez straight time for on-call work, and it did not breach a contract when it declined to do so. *Id.* CHCO's argument is unconvincing. Taking Ms. Gomez' allegations as true, the on-call policy, which uses the same exemption standard as the FLSA, required that CHCO classify Ms. Gomez as non-exempt. Am. Compl. ¶¶ 137, 165, 181. By mis-classifying her and then failing to pay her for on-call hours, CHCO allegedly breached

the contract.[2] Moreover, adopting CHCO's argument would permit CHCO to refuse an employee straight time as long as it considered the employee exempt, regardless of how the contract actually required CHCO to label the employee. None of Ms. Gomez' allegations suggest the on-call policy permits such an unreasonable result. Therefore, I find Ms. Gomez sufficiently alleges breach of contract and promissory estoppel claims for failure to pay straight time in accordance with the on-call policy.

## II. Ms. Gomez' Ninth Claim: Violation of the CWCA

Ms. Gomez' ninth cause of action asserts CHCO violated the CWCA by refusing to pay her 398.46 hours of accrued sick leave when she resigned. Am. Compl. ¶¶ 205–09, ECF No. 21. CHCO asserts Ms. Gomez fails to state a claim, because the sick leave was not earned, vested, and determinable pursuant to CHCO internal policies. Partial Mot. to Dismiss 9–12, ECF No. 25. I agree with CHCO.

The CWCA provides: "When an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately." Colo. Rev. Stat. § 8-4-109(1)(a) (West 2018). Benefits are earned, vested, and determinable when an employee has an enforceable right to receive payment for such benefits pursuant to an employment agreement. *See Fang v. Showa Entetsu, Co.*, 91 P.3d 419, 422 (Colo. App. 2003) ("For purposes of the CWCA, compensation is earned 'if it is vested pursuant to an employment agreement at the time of an

---

[2] CHCO argues that Ms. Gomez' remedy for being mis-classified is to bring an FLSA claim. Partial Mot. to Dismiss 8. However, CHCO admits that Ms. Gomez cannot assert an FLSA claim for failure to pay straight time in excess of the minimum wage. *Id.* ("[T]he FLSA does not provide a claim for unpaid straight time.").

employee's termination.'" (quoting *Barnes v. Van Schaack Mortg.*, 787 P.2d 207, 209 (Colo. App. 1990))); *see also In re Marriage of Cardona & Castro*, 316 P.3d 626, 634 (Colo. 2014) ("Although section 8–4–101(8)(a)(III) of the Wage Claim Act refers only to 'vacation' pay, other forms of leave (such as sick leave) may be compensation for services performed where the employee has an enforceable right to receive payment for such leave.").

Here, Ms. Gomez does not allege that an employment agreement or CHCO's internal policies give her an enforceable right to receive payment for her unused sick leave. Ms. Gomez alleges she accrued 398.46 hours of unused sick leave under CHCO's Extended Illness Bank Policy ("EIB Policy"). Am. Compl. ¶¶ 205–06. Regarding the payout of unused benefits, the EIB Policy provides, "Terminated employees forfeit their EIB hours if they have less than 15 years of service and/or less than 650 EIB hours on the date of termination."[3] ECF No. 25-1, at 2. Ms. Gomez alleges she had only 398.46 hours of accrued sick leave and had worked at CHCO for almost nine years. Am. Compl. ¶¶ 14, 131, 206. Therefore, Ms. Gomez' benefits were not "vested pursuant to an employment agreement." *Barnes*, 787 P.2d at 209.

Ms. Gomez urges me to disregard the EIB Policy and interpret "earned, vested, and determinable" according to their plain meaning. Resp. to Partial Mot. to Dismiss 5, ECF No. 32. However, as I mentioned above, Colorado courts have specifically held that employment agreements define when benefits are earned, vested, and determinable. *Barnes*, 787 P.2d at 209 (stating that

---

[3] I can consider the EIB Policy at the motion to dismiss stage, because Ms. Gomez specifically refers to it in her Amended Complaint and it is central to her claim. *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[If] a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

benefits must be "vested pursuant to an employment agreement"); *Fang*, 91 P.3d at 422 (analyzing the terms of an employment agreement to determine whether benefits were vested). Furthermore, even considering the dictionary definitions, Ms. Gomez' benefits were not vested. Black's Law Dictionary defines "vested" as, "Having become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." *Vested*, Black's Law Dictionary (10th ed. 2014). Because Ms. Gomez' right to receive her sick leave benefits at separation was contingent on her accruing 650 hours and working at CHCO for fifteen years, her right was not absolute or unconditional.

Ms. Gomez next argues the EIB Policy does not state when benefits are earned or vested; instead, it lists conditions under which benefits are forfeited. Resp. to Partial Mot. to Dismiss 4. I reject this argument. Although in a slightly different context, the Colorado Court of Appeals has defined benefits which are not capable of being forfeited as vested. *See Meeker v. Provenant Health Partners*, 929 P.2d 26, 28–29 (Colo. App. 1996) ("Under similar plans for leave pay in which leave time once credited is not forfeitable, *i.e.*, it has "vested", courts have uniformly held that such pay must be included in computing an average weekly wage."). Thus, contrary to Ms. Gomez' contention, the EIB Policy delineates when sick leave benefits vest.

Lastly, Ms. Gomez argues this case is similar to *Hallmon v. Advance Auto Parts, Inc.*, 921 F. Supp. 2d 1110 (D. Colo. 2013). Resp. to Partial Mot. to Dismiss 5–6. In *Hallmon*, a list of frequently asked questions provided that employees must be active team members at the time of a bonus payout to receive the bonus after termination. 921 F. Supp. 2d at 1120. The defendant argued the plaintiff's bonus was not "earned" or "vested," because it terminated the plaintiff one day before it paid the bonuses. *Id.* The court held that the "active team member" condition did not redefine

13

when benefits vest. *Id.* The plaintiff had a right to receive the bonus when the employer calculated the amount it would pay him on his next paycheck. *Id.* The active team member requirement merely "provide[d] a condition for the payment of bonuses that otherwise have already vested." *Id.* The court found it important that adopting the defendant's argument "would allow employers to manipulate similar contractual language to avoid paying rightful wages to employees by conveniently terminating them shortly before their payday." *Id.* Unlike the plaintiff in *Hallmon*, Ms. Gomez was never entitled to receive a payout of her benefits. Before obtaining a right to sick leave benefits at separation, Ms. Gomez was required to work for CHCO for fifteen years and accrue 650 hours. Thus, enforcing CHCO's policy does not permit CHCO to terminate employees shortly before a payday and avoid paying them rightful benefits. Indeed, once an employee works for CHCO for fifteen years and accrues 650 hours, that employee will receive a payout of all unused hours regardless of the timing of the next payday.

Therefore, I find Ms. Gomez' accrued sick leave was not earned, vested, and determinable under the terms of the EIB Policy. As such, CHCO did not violate the CWCA when it refused to payout her unused leave at separation.

## CONCLUSION

In sum, the FLSA preempts Ms. Gomez' breach of contract and promissory estoppel claims for failure to pay overtime. However, Ms. Gomez states a claim for denial of straight time in accordance with CHCO's policy. Therefore, I dismiss Ms. Gomez' seventh and eighth claims in full, and I dismiss her fifth and sixth claims in part. Lastly, because Ms. Gomez did not have an enforceable right to receive her accrued sick leave at resignation, I dismiss her ninth cause of action. Accordingly, CHCO's Partial Motion to Dismiss [filed February 13, 2018; ECF No. 25] is **granted**

**in part and denied in part**.

Entered and dated at Denver, Colorado, this 5th day of July, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge